UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:25-CR-00003-DCLC-CRW |
| | ) | |
| AARON TYSHAWN JACKSON | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's pro se[1] Motion to Suppress Evidence [Doc. 53] and Motion to Dismiss [Doc. 55]. The United States responded. [Docs. 56, 58]. The Court conducted an evidentiary hearing regarding the motion to suppress [Doc. 53] on October 7, 2025. These motions are ripe for resolution. For the reasons set forth, Defendant's motion to suppress [Doc. 53] and motion to dismiss [Doc. 55] are **DENIED**.

**I.    BACKGROUND**

On October 23, 2024, the United States obtained a criminal complaint against Defendant. [Doc. 1]. On January 14, 2025, the grand jury returned an indictment against Defendant and others, charging them with a conspiracy to distribute 400 grams or more of fentanyl, a conspiracy to distribute 50 grams or more methamphetamine, several counts of distribution of various amounts of fentanyl, and possession of a firearm in furtherance of a drug trafficking offense, among others. [Doc. 4]. The indictment also included a "Notice of Enhanced Penalties" section in which it

---

[1] Defendant is proceeding pro se. FDS was initially appointed but withdrew, and CJA Panel Attorney Grace Studer was then appointed. Defendant advised the magistrate judge that he wanted to represent himself and only wanted "elbow counsel." After fulling advising Defendant of the perils of his decision, the magistrate judge appointed Ms. Studer to serve as "elbow counsel." [Doc. 51].

alleged Defendant had a previous conviction for aggravated assault in which he received a three-year sentence of imprisonment. *Id.*

Defendant came on law enforcement's radar when they were able to conduct two undercover buys of fentanyl from Defendant on October 9, 2024 and October 16, 2024. [Doc. 56, pg. 2]. During their investigation, law enforcement obtained authority to track the pen registers of two phone numbers that were associated with Defendant. *Id.*

Detective Jesse Altman, with the Kingsport Police Department and a Task Force Agent with the Tennessee Beureasu of Investigation, testified at the suppression hearing that he and other law enforcement officers were monitoring the pen registers on October 22, 2024, which indicated that Defendant's cell phones were travelling north on Interstate 75 near Cleveland, Tennessee. *Id.* Detective Altman's investigation concluded that the cellphone was coming from a Dodge Charger travelling on Interstate 40. *Id.* at 2–3. Surveillance continued as the vehicle entered Greene County on Interstate 81 (I-81). *Id.* Detective Altman testified that law enforcement had paced the vehicle on I-81 at 80–85 miles per hour in a 70 mile per hour zone and the vehicle had an inoperable driver's side headlight. *Id.* at 3. Given those two traffic violations, Detective Altman elected to have the vehicle stopped.

The vehicle exited I-81 at Exit 23, crossed over I-81 and entered a parking spot in the McDonald's parking lot. *Id.* At that point, a Tennessee Highway Patrol (THP) officer pulled into the McDonald's parking lot, initiated his blue lights and attempted to effect a traffic stop. The vehicle backed up and began to leave. The officer exited his patrol car and ordered them to stop and exit the vehicle. They refused. The vehicle evaded the officer, drove around McDonald's and struck another law enforcement vehicle on its way out of the lot. *Id.*

The vehicle exited onto Hwy 11-E headed back across I-81, heading toward Greeneville.

As it approached the ramp to enter I-81 South, Detective Altman testified that a black bag was thrown out of the driver's side of the vehicle landing near the side of the road. *Id.* A law enforcement vehicle was sitting on the side of the road near where the black bag was thrown out of the vehicle. Officers retrieved the bag which contained "approximately six pounds (2,721 grams) of Methamphetamine), approximately 11 ounces (314 grams) of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide) and approximately 4.6 ounces (130 grams) of counterfeit pills found to contain butyryl fentanyl." *Id.*

THP continued to pursue the vehicle for another 13 miles, with speeds reaching 120 mph. It ended when the vehicle crashed at the intersection of Hwy 11-E and Hwy 93. *Id.* at 4. Defendant was sitting in the back seat on the driver's side of the vehicle. *Id.*

Detective Altman testified that the following morning, he was contacted by Greene County law enforcement who advised that pedestrians had located a firearm around the intersection of Andrew Johnson Highway and I-81 on the shoulder of the road, about 75 – 100 yards from where officers had found the discarded bag.

After Defendant's arrest, Defendant was given his *Miranda* warnings, and he agreed to speak with law enforcement. *Id.* Detective Altman testified that during the interview, Defendant eventually admitted that he was a drug dealer and that he had thrown the black bag and the firearm out of the vehicle. *Id.* Defendant's pro se motion to suppress and motion to dismiss followed. The Court will address each in turn.

## II. DISCUSSION

### A. Motion to Suppress [Doc. 53]

Defendant's motion to suppress [Doc. 53] seeks to exclude "the evidence obtained" on October 22, 2024 at the "bulls gap exit" and "certain materials" "seized from Defendant during a

'search/arrest.'" At the hearing, Defendant clarified that the materials he seeks to suppress are the black bag and the firearm that were thrown from the vehicle near the McDonald's restaurant exit on I-81 during the pursuit. In his motion, Defendant contends that this evidence is inadmissible because the traffic stop was "wrongfully [] presented which then cause[d] us to flee the scene" which led to an unlawful search and seizure in violation of his Fourth Amendment right. *Id.*

In its response, the United States argues that law enforcement had a lawful basis to conduct a traffic stop because the vehicle was paced exceeding the speed limit and had an equipment violation, the broken headlight. *See* [Doc. 56]. Additionally, the United States argues that Defendant lacks standing to challenge the admissibility of this evidence because he abandoned any reasonable expectation of privacy in the bag and the firearm after he threw them from the vehicle. *See id.*

### i. The Traffic Stop

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop qualifies as a seizure and thus is subject to the constitutional requirements of the Fourth Amendment that the stop be reasonable. *See United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). "The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Tennessee law prohibits any person from operating or driving a motor vehicle at a rate of speed more than 70 miles per hour on an interstate highway. Tenn. Code Ann. § 55-8-152. Additionally, in Tennessee, motor vehicles must be equipped with at least two and not more than four headlights, with at least one on each side of the front of the motor vehicle. Tenn. Code Ann.

§ 55-9-402. Law enforcement observed two violations of Tennessee law in the operation of the vehicle. The vehicle was speeding on the interstate and had a broken headlight. "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourteenth Amendment." *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (citation omitted). In this case, the traffic stop was proper as officers had probable cause to believe that the operator of the vehicle had committed two traffic violations.

### ii. Standing

Even if there were issues with the traffic stop, which there are not, Defendant could still not prevail as he lacks standing to challenge the search and seizure of the abandoned bag and firearm. "[A] defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) (quotation omitted). If a defendant does not meet this burden, he lacks standing to contest the search or seizure. *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013). "No seizure occurs when there is a pursuit of a person attempting to evade police custody, and any evidence discarded or abandoned in the chase is not the fruit of a seizure." *California v. Hodari D.,* 499 U.S. 621, 627 (1991). When a defendant disclaims ownership in property, or abandons it, they cannot demonstrate an expectation of privacy in it. *See United States v. Martin*, 399 F.3d 750, 753 (6th Cir. 2005) ("The district court correctly held that defendant did not submit to the show of authority made by the officers. Instead of submitting, he attempted to flee. In the process of fleeing, he discarded his revolver. Because he had not been seized when he discarded his revolver, under *Hodari D.,* he abandoned it, and it is irrelevant whether police misconduct caused the abandonment.").

Defendant abandoned any expectation of privacy in the black bag and the firearm when he threw them out of the vehicle window while law enforcement was in pursuit. Defendant, therefore, lacks standing to challenge the admissibility of the evidence at issue.

Accordingly, Defendant's motion to suppress [Doc. 53] is **DENIED**.

B.     **Motion to Dismiss [Doc. 55]**

Defendant also moves to dismiss the charges against him, contending that "[t]he only evidence comes from an unreliable statement made under oath from a law-abiding officer inside our Criminal Complaint report." [Doc. 55, pg. 1]. Defendant also argues that any evidence was obtained in violation of his Fourth Amendment rights.[2]

Although this prosecution began with the filing of a criminal complaint [Doc. 1], the grand jury indicted Defendant on January 14, 2025 [Doc. 4]. The indictment contains the formal charges Defendant is facing and it supersedes the criminal complaint. To the extent that Defendant is seeking to dismiss the criminal complaint, that argument is meritless given the action by the grand jury. But even if there were issues with the criminal complaint, Defendant has not shown that those issues affected the grand jury's action in returning an indictment against him. *See United States v. Williams*, 85 F. App'x 341, 348–49 (4th Cir. 2004) (rejecting the defendant's challenge to any defects in the criminal complaint because the defendant failed to demonstrate how those defects rendered the subsequent indictment returned against him defective).

In any event, recognizing that Defendant is proceeding pro se and providing him leeway, the Court will treat Defendant's motion to dismiss the criminal complaint as a motion to dismiss the indictment. *See United States v. McKinney,* 375 F. App'x 479, 481 (6th Cir. 2010). The Court

---

[2] In this memorandum opinion, the Court has found Defendant's Fourth Amendment rights were not violated as the officers had probable cause to stop the vehicle in which Defendant was a passenger.

also finds this motion meritless. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed R. Crim. P. 7(c)(1); *see also Hamling v. United States,* 418 U.S. 87, 117 (1974) (noting that an indictment is constitutionally sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and ... enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense"). The indictment against Defendant satisfies these requirements. The indictment is constitutionally valid and Defendant's arguments that dismissal is necessary lack merit, and so the motion to dismiss is **DENIED**. *See United States v. Toatley,* 2 F. App'x 438, 441–42 (6th Cir. 2001) (noting the "well-accepted principle that grand jury indictments are presumed valid" and that the law is designed to limit a trial court's ability to dismiss indictments); *Costello v. United States*, 350 U.S. 359, 363 (1956) (noting that "[i]f indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed").

### III. CONCLUSION

For the reasons set forth, Defendant's motion to suppress [Doc. 53] and motion to dismiss [Doc. 55] are **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge